

# Missouri Court of Appeals

## Southern District

### Division One

KATHY LYNN SHAFER,                )
                                                          )
       Petitioner/Appellant,        )
                                                          )
vs.                                              )        No. SD32627
                                                          )        Filed: March 11, 2014
DANIEL DEL SHAFER,            )
                                                          )
       Respondent/Respondent.    )

### APPEAL FROM THE CIRCUIT COURT OF ST. CLAIR COUNTY

Honorable Michael C. Dawson, Associate Circuit Judge

### REVERSED AND REMANDED IN PART WITH DIRECTIONS; AFFIRMED IN PART.

Kathy Lynn Shafer ("Wife") appeals from a "Judgment Entry" ("Judgment") of the trial court dissolving her marriage to Daniel Del Shafer ("Husband"). Wife alleges the trial court's division of marital property without an equalization payment was an abuse of discretion. We agree and reverse and remand this matter to the trial court with directions.

### Factual and Procedural History

Wife filed a "Petition for Dissolution of Marriage" on May 17, 2012, after almost nine years of marriage. Husband filed his answer on June 18, 2012.

The case proceeded to trial on January 10, 2013. Wife's Exhibit 1, offered and admitted at trial, "recommended" Wife be awarded $4,050 of the marital assets, and Husband be awarded $65,109[1] of the marital assets, not including the marital real estate because he was given a credit for the real estate marital debt awarded to him.

At trial, Wife also offered Exhibit 3, "Petitioner's Division List," wherein Wife detailed her suggested division of property[2] and requested an "Equalization Payment to Wife" of $29,518. Wife testified she was asking the trial court for an equalization payment in the judgment, but she would accept items in Exhibit 1 if the trial court chose to award some of those items to her in lieu of the equalization payment. Wife also testified she was disabled and incapable of employment, and had been declared disabled by the Social Security Administration. She admitted Husband owned the marital home at the time they were married, but the home was refinanced during the marriage, and mortgage payments—after refinancing—were made during the marriage. Wife explained she was disabled in 2008. She worked outside of the home "for about a month and [she] couldn't do it."

There was no testimony regarding Wife's employment from the time of their marriage in 2003 until her disability determination in 2008. She offered no other evidence about her contribution to the marital property. Wife presented no evidence about any monetary value for the services she performed around the house.

---

[1] Wife's brief recites Husband was awarded $60,811 in marital property. The difference in the figures is because Wife's calculation includes credits to Husband's award in the amount of $4,298 for medical/dental bills incurred by Wife. These credits are incorrect. The dental bill of $2,023 would not be a credit to Husband because that debt was awarded to wife, *see infra*, and the trial court gave Husband a credit for the medical debt awarded to him in the Judgment. In fact, Wife asked the trial court to not allow a credit to Husband for the medical debt in the division of marital property.

[2] The subtotal of property allocated to Husband in Wife's Exhibit 3 also includes a credit to Husband for the dental bill of $2,023. This credit explains the difference in our calculation of the award to Husband and Wife's calculation.

Wife testified she and Husband got into an argument on the date of their separation, and Husband "hit [her] on the head [with a toy stick] and knocked [her] over on the couch and hit [her] twice on the hip with that stick." She further testified Husband "got up on [her] and was choking [her]." Husband testified Wife hit him across the leg with the "stick," he lost his temper, and they began fighting over the stick. During the fight, Husband "shoved her down on the couch" and Wife hit her head on the nearby windowsill. He then "gave her a couple of raps across her butt" with the stick. Wife's injuries required medical treatment and she incurred medical expense of $2,275, which debt Husband was ordered to pay pursuant to the Judgment.[3]

Husband's testimony was that he did not feel Wife should be awarded any payment to equalize the division of property because she did not pay rent to him during the marriage for the house where they lived. He testified that he and Wife had agreed she would pay $250 rent each month.

Husband's testimony included the fact that he was unemployed and had various infirmities precluding his employment. Husband testified he could not pass the physical for his former employment as a truck driver, and that he was "let . . . go" or "dismiss[ed] for medical extension reasons" because he used his sick days and medical time due to his blood pressure and diabetes.

At the conclusion of the evidence presented, the trial court took the matter under advisement. On February 19, 2013, the trial court entered its Judgment dissolving the parties' marriage. The Judgment ordered the marital and non-marital property be apportioned as

---

[3] Husband also alleged he "got an injury to [his] leg" as a result of Wife swinging the stick. However, no evidence, in the form of medical records or medical bills, was presented to the trial court describing Husband's leg injury, nor was a claim made for medical bills for his alleged injuries.

3

identified and specified in Wife's Exhibit 1, which was attached to the Judgment, and awarded Wife $100 maintenance per month.

The trial court's Judgment ordered Wife to pay Dr. James Bourland $2,023;[4] Husband was ordered to pay the debts to St. Clair County State Bank in the approximate amount of $110,000, Sac Osage Hospital in the amount of $2,121, and a radiology expense in the amount of $154.[5]

Under Wife's Exhibit 1 and the Judgment, in terms of percentages, Wife received 5.856 percent of the marital assets and Husband received 94.14392 percent of the marital assets, after a credit for the marital debt awarded to Husband.[6] In its Judgment, the trial court adopted Wife's Exhibit 1 in its entirety, but did not mention Wife's requested equalization payment. The trial court's Judgment did not include any mention of Wife's requested equalization payment. This appeal followed.

In her one point on appeal, Wife alleges the trial court erred in its division of marital assets because "*the ruling was not a correct application of the law requiring a just division of marital property, was not supported by substantial evidence justifying such an unequal division and was, therefore, an abuse of discretion.*" (Italics in original). The issue for our determination is whether the trial court abused its discretion in dividing the parties' marital property.[7]

---

[4] At trial, Wife asked the trial court to award this debt to Husband "because of [her] limited ability to pay that debt." Nonetheless, the trial court's Judgment awarded this debt to Wife.

[5] This debt was jointly incurred during the marriage by the parties.

[6] In light of the different figures of Husband's marital property award, *see supra* n.1, the percentages of marital assets we determined were awarded to the parties is slightly different from the figures asserted in Wife's brief. Wife alleges Husband was awarded 93.75 percent and Wife was awarded 6.25 percent of the marital assets.

[7] Wife argues she does not contest the trial court's adoption of Exhibit 1 as the basis for its Judgment. Her complaint is the trial court's failure to award an equalization payment "or, alternatively, . . . set apart items of the marital property to the Wife that would have equalized the division of marital property."

4

## Standard of Review

Our standard of review was set out in **Workman v. Workman**, 293 S.W.3d 89 (Mo.App.

E.D. 2009):

> When reviewing a division of marital property, we give deference to the trial court, which is vested with considerable discretion in dividing marital property. Appellate courts will interfere only if the division of property is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. It is not *per se* an abuse of discretion if the trial court awards one party a considerably higher percentage of the marital property than it awarded the other party. A division of marital property need not be an equal division, but must only be fair and equitable given the circumstances of the case.

*Id.* at 95-96 (internal citations omitted).

We presume the division of marital property is correct, and the party challenging the division bears the burden of overcoming that presumption. **Souci v. Souci**, 284 S.W.3d 749, 755 (Mo.App. S.D. 2009). "An abuse of discretion is present when the trial court's ruling is clearly against the logic of the circumstances, which are before the court, and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." **Hight v. Hight**, 314 S.W.3d 874, 877 (Mo.App. S.D. 2010).

## Analysis

Wife contends "the trial court abused its discretion in the division of marital property." Wife argues there was not substantial evidence supporting the trial court's "one-sided division of the marital assets."

A trial court "must divide marital property in such proportions as the court deems just, after considering the relevant criteria set out in Section 452.330."[8] **Workman**, 293 S.W.3d at 96 (internal quotation and citation omitted). The factors in section 452.330 are:

---

[8] All references to statutes are to RSMo 2000, unless otherwise indicated.

5

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as a homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

§ 452.330.1(1)-(5).

The trial court "is not required to follow a rigid formula and does not have to divide the property equally; however, the division must be fair and equitable to the parties." *Hight*, 314 S.W.3d at 878 (internal quotation and citation omitted). We review the evidence and determine "whether the evidence was sufficient to support the unequal division of the parties' marital property as being fair and equitable." *Nelson v. Nelson*, 25 S.W.3d 511, 518 (Mo.App. W.D. 2000).

"[A]s a general rule, the division of marital property should be substantially equal unless one or more statutory or relevant non-statutory factors causes such a division to be unjust." *Ballard v. Ballard*, 77 S.W.3d 112, 116 (Mo.App. W.D. 2002) (internal quotation and citation omitted). Here, the division of marital property was far from equal: Wife received 5.856 percent of the marital assets; Husband received 94.14392 percent of the marital assets. A careful review of the record before this Court indicates there was insufficient evidence to support such a disproportionate division of the marital property to Husband, based on the factors in section 452.330.3.

6

The evidence regarding the first factor in section 452.330 favors Wife. While both parties were in similar economic circumstances as they were unemployed, the trial court specifically found Wife was "disabled and incapable of employment to such an extent that she has been declared disabled by the Social Security Administration." The Judgment further found Wife did "not have the ability to provide for herself to the extent experienced during the marriage[,]" and she meets the first element of the test for maintenance pursuant to section 455.335.

With respect to Husband, the Judgment noted he was unemployed and that Husband "complains of various infirmities precluding his employability." However, there was no specific finding that Husband was disabled and incapable of employment.

The evidence regarding the second factor was minimal, at best. Wife testified Husband owned the marital home and property before they were married, but it was refinanced during the marriage and the mortgage payments were marital. Husband acknowledged Wife "bought the groceries, cleaned the house and all the stuff, you know, like cleaning equipment and stuff like that." He testified "she had her own money[,] [and s]he never had to pay any rent [or] . . . utilities. It was her deal that she paid $250 a month to offset . . . the extra expense for her and her daughter and her son." Husband later stated Wife failed to provide the $250 per month.[9] However, the record is silent as to Wife's employment and contribution to the marital property beyond these conclusions, and no monetary value was assigned for the services Wife performed around the house.

The evidence regarding the third factor demonstrates Wife was awarded $3,750 in non-marital property, and Husband was awarded $4,480 in non-marital property.

---

[9] Husband later testified he was "charging her $250 a month rent[.]" He further claimed Wife was not entitled to an equalization payment because she did not pay rent to him.

7

There was conflicting evidence regarding the parties' conduct during the marriage, relevant to the fourth factor. The record reflects Husband and Wife got into an argument on the date of their separation, and Husband "hit [her] on the head [with a toy stick] and knocked [her] over on the couch and hit [her] twice on the hip with that stick." Wife claimed Husband "got up on [her] and was choking [her]." Husband testified Wife hit him across the leg with the "stick," he lost his temper, and they began fighting over the stick. During the fight, Husband "shoved her down on the couch" and she hit her head on the nearby windowsill. He then "gave her a couple of raps across her butt" with the stick. Wife's injuries required medical treatment and she incurred medical expense of $2,275, which debt Husband was ordered to pay pursuant to the Judgment.

Consideration of marital conduct is certainly required in some cases. However, marital conduct is only "a factor in property division when the offending conduct places extra burdens on the other spouse." *McNair v. McNair*, 987 S.W.2d 4, 6 (Mo.App. W.D. 1998). "There must also be evidence of the specific added burdens the non-offending spouse is claiming he or she suffered as a result of such misconduct." *Ballard*, 77 S.W.3d at 118. Here, however, the record is silent as to any added burdens to Wife *or* Husband due to the parties' marital conduct.

There were no minor children so the fifth factor of section 452.330 is not pertinent.[10]

Following this analysis, we note there is either no evidence or substantial evidence, based on the record before us, to support the trial court's decision to award Wife 5.856 percent of the marital assets and award Husband 94.14392 percent of the marital assets. A division of marital property must be fair and equitable given the circumstances. *Ballard*, 77 S.W.3d at 116. There is no mention in the Judgment of what evidence the trial court relied upon for its disproportionate

---

[10] No party requested specific findings of fact and conclusions of law pursuant to Rule 73.01. *See Holland v. Holland*, 865 S.W.2d 867, 870 (Mo.App. S.D. 1993) (noting a trial court is not required to set forth grounds for its decision when neither party makes a timely request).

8

division of marital property, and none of the factors support the trial court's division of marital property without awarding an equalization payment to Wife.

While the trial court is vested with "considerable discretion" in dividing marital property, we find the trial court's ruling resulted in an unjust and inequitable award, which is against the logic of the circumstances before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *See Workman*, 293 S.W.3d at 95.

Husband's only discernible argument is that the trial court did not adopt Wife's valuation of the marital and non-marital property. After acknowledging the trial court "was free to assign whatever values were supported by the evidence to any of the assets," Husband then sets forth his testimony contradicting Wife's values. We do not see how this argument demonstrates a lack of abuse of discretion for two reasons.

First, the language of the Judgment does not support Husband's position. The construction of the Judgment is a question of law. *State ex rel. Beaird v. Del Muro*, 98 S.W.3d 902, 909 (Mo.App. W.D. 2003). "[W]hen the language of the judgment is plain and unambiguous there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used." *Gaunt v. State Farm Mut. Auto. Ins. Co.*, 24 S.W.3d 130, 138 (Mo.App. W.D. 2000) (internal quotations and citations omitted). When the language of the judgment is plain and unambiguous, we do not look outside the four corners of the judgment for its interpretation. *Lombardo v. Lombardo*, 120 S.W.3d 232, 244 (Mo.App. W.D. 2003).

Giving the language of the Judgment here its plain and ordinary meaning, there can be no mistake the Judgment incorporated Wife's values. The trial court's Judgment included a brief "Findings of Fact and Conclusions of Law," finding Husband agreed "generally" with Wife's Exhibit 1:

> 7. Petitioner admits her exhibit 1 which identifies the parties' marital and non marital property and a proposed division of the same. *[Husband] generally agrees with this classification*.

(Emphasis added).

Furthermore, the Judgment specifically provided the marital and non-marital property was to be divided in accordance with Exhibit 1. The Judgment provided:

> That the marital and non-marital property is apportioned as identified and specified within [Wife]'s exhibit 1 a copy of which is attached hereto and incorporated herein.

Second, even accepting Husband's values of marital property, the award would still result in an unjust and inequitable division (without an equalization payment to Wife). Husband argues, under his values, he was awarded $21,440 in marital assets and Wife was awarded $4,050. This would result in an award to Wife of approximately 16 percent and Husband approximately 84 percent. The evidence does not support these calculations at any rate. Wife's Point I is granted.

We reverse and remand this case to the trial court for additional consideration or proceedings necessary to complete a just and equitable division of the marital property in a manner consistent with this opinion; because the division of property is the first factor that must be considered in determining any award of maintenance, *see* section 452.335.1(1), the trial court

10

is also directed to reconsider its maintenance award in light of its revised property division.

Those portions of the trial court's Judgment not disturbed by this opinion are affirmed.

WILLIAM W. FRANCIS, JR., C.J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. - Concurs

DANIEL E. SCOTT, J. - Concurs